UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DARRIN STEWART,                                    Civil No. 08-6085 (RHK/SRN)

      Petitioner,

v.                                                 **REPORT & RECOMMENDATION**

M. CRUZ, Warden, of FPC Duluth,

      Respondent.

---

Darrin Stewart, *pro se*, Federal Prison Camp, P.O. Box 1000, Duluth, Minnesota 55814.

Gregory Brooker and Ana Voss, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Respondent.

---

SUSAN RICHARD NELSON, United States Magistrate Judge.

    This matter is before the undersigned United States Magistrate Judge on Petitioner Darrin Stewart's Application for Writ of Habeas Corpus Under 28 U.S.C. § 2241 [Doc. No. 1]. The Respondent has filed a Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. No. 8].[1] The matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that the petition be denied.

---

[1] On February 17, 2009, Petitioner filed a Motion to Strike the Government's Response and the Declaration of John A. Farrar, ("Petr.'s Mot. to Strike") [Doc. No. 13]. On March 10, 2009, this Court issued an order denying the motion to strike but holding that, when ruling on the instant Petition for Writ of Habeas Corpus, the Court would consider the arguments made in Petitioner's Motion to Strike, as well as the Government's arguments in opposition to the motion [Doc. No. 22]. The Court has now considered those arguments in making its recommendation on the instant petition and response.

1

I.  **BACKGROUND**

Petitioner Darrin Stewart, an inmate at the Federal Prison Camp-Duluth, filed this Petition for Writ of Habeas Corpus on November 19, 2008 [Docket No. 1]. Stewart was convicted of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1). He was sentenced to 60 months in prison and four years of supervised release on August 13, 2004. Respondent projects his release date as November 1, 2011 with Good Conduct Time ("GCT") release.

Stewart alleges that the Bureau of Prisons (BOP) miscalculated his release date because the BOP did not run his Commonwealth of Kentucky state sentence concurrently with his Eastern District of Kentucky federal sentence. (Petr.'s Memo. in Supp. of his Mot. under 28 U.S.C. § 2241 at 2, hereinafter "Petr.'s Memo").[2] Additionally, Stewart claims that the Farrar Declaration attached to the Government's Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ("Govt.'s Resp.") does not calculate his jail credit correctly because it does not show 283 days of jail credit from the United State's Marshal's Service and does not address the application of jail credit against his federal sentence for the period from August 17, 2004 to April 4, 2006 (after his federal sentence but before his state sentence). (Petr.'s Mot. to Strike at 1). Respondent contends Stewart's petition should be denied because: (1) Stewart failed to exhaust his administrative remedies; and/or (2) Stewart's sentence has been calculated correctly.

---

[2] As Respondent correctly notes, Stewart's request to have his state sentence run concurrently with his federal sentence is a request for a *nunc pro tunc* designation to retroactively designate the state prison where Stewart was confined as the place of confinement for his federal sentence so that his state and federal sentences can be considered to run concurrently.

2

The State of Kentucky arrested Stewart on December 22, 2003, for drug trafficking charges related to his federal offense. On December 24, 2003, the State of Kentucky dismissed the state charges in lieu of federal prosecution and released Stewart on bond. The BOP credited Stewart with two days towards his federal sentence for this time.

On March 22, 2004, Stewart was again arrested by the State of Kentucky for manufacturing methamphetamine. Although Respondent did not provide this information, this Court has determined that Stewart was released from custody on March 30, 2004 (see Decl. of John Farrar dated Jan. 23, 2009 at Ex. F, Aug. 27 2007, Memorandum for J&C File). The documents before the court do not indicate how or why Stewart was released by the State of Kentucky on that date. Stewart surrendered himself to the commitment of the DEA on April 7, 2004, and was released on bond the same day. The BOP credited Stewart for this day in computing his federal sentence.

The State of Kentucky arrested Stewart again for manufacturing methamphetamine on May 11, 2004. The United States Marshall Service (USMS) borrowed Stewart from the State of Kentucky by a writ of habeas corpus *ad prosequendum* on June 3, 2004. On August 13, 2004, Judge Karl S. Forester in the Eastern District of Kentucky convicted Stewart and sentenced him to imprisonment for 60 months. The USMS returned Stewart to state custody on August 17, 2004.

For his March and May 2004 offenses of methamphetamine manufacturing, Stewart was sentenced to a ten-year term of imprisonment by the State of Kentucky on April 5, 2006. On June 28, 2007, Stewart was discharged from the custody of the State of Kentucky and taken into federal custody. The BOP considers June 28, 2007 as the commencement of Stewart's sentence.

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies

Respondent contends that Stewart's Petition should be dismissed because Stewart did not exhaust his administrative remedies. In response, Stewart asserts that he never received a response to his administrative complaint from the BOP and therefore he could not exhaust his administrative remedies. The status of Stewart's administrative complaint is not clear to this Court,[3] but as set forth *infra.*, this Court recommends that Stewart's Petition should nevertheless be dismissed on the merits.

It is well-established that inmates challenging the computation or execution of their sentences through a writ of habeas corpus must first exhaust their available administrative remedies. United States v. Tindall, 455 F.3d 885, 888 (8th Cir. 2006); United States v. Pardue, 363 F.3d 695, 699 (8th Cir. 2004); United States v. Chappel, 208 F.3d 1069, 1069 (8th Cir. 2000); see also United States v. Wilson, 503 U.S. 329, 334-35, 112 S. Ct. 1351, 117 L. Ed. 2d 593 (1992) (prisoner can seek judicial review of sentence computation after exhausting administrative remedies). The exhaustion requirement for § 2241 habeas petitions is judicially created and is not jurisdictional. Lueth v. Beach, 498 F.3d 795, 797 n. 3 (8th. Cir. 2007).

Because the exhaustion requirement is not jurisdictional, courts may create exceptions to the exhaustion requirement. Frango v. Gonzales, 437 F.3d 726, 728-29 (8th Cir. 2006). Courts have excused a failure to exhaust when to do so would have been futile. Id.; Elwood v. Jeter,

---

[3] Petitioner submitted the April 29, 2008 letter and first raised the futility/waiver argument in his Reply to Govt.'s Response. On February 19, 2009, this Court issued an Order allowing Petitioner to file a reply brief and further stating, "[t]hereafter, no further submissions from either party will be permitted, except as expressly authorized by Court order." [Doc. No. 15]. On April 3, 2009, without leave of the Court, the Government filed a Response in Opposition to Petitioner's Reply [Doc. No. 24]. Because the Government did not request or receive permission to file this additional submission, and because this Court does not resolve the Petition on the basis of exhaustion or waiver of administrative remedies, the Court has not considered this brief in making its recommendation on the Petition.

4

386 F.3d 842, 844 n. 1 (8th Cir. 2004); U.S. v. Galceran, Civ. No. 07-4659, 2008 WL 4104696, *2 (D. Minn. Aug. 29, 2008) (citing Frango, 437 F.3d at 728-29); Robinson v. Holinka, Civ. No. 06-621, 2007 WL 1054283, *4 (D. Minn. April 29, 2007).

In an analogous situation in a 42 U.S.C. § 1983 action, where exhaustion is required by statute in the Prison Litigation Reform Act (PLRA), the Eighth Circuit held the prisoner had exhausted his administrative remedies. Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001). In that case, the prisoner filed an Informal Resolution Request (IRR) but did not pursue any administrative remedies beyond the IRR. Id. The prisoner alleged that he was unable to pursue the next administrative procedure because the state department of corrections did not respond to the IRR and grievance officers would not allow him to file a grievance until he received a response to the IRR. Id. The court stated "that [the Missouri Department of Corrections'] failure to respond to his IRR precluded him from filing a grievance . . . [and] this suggests that he had exhausted his available administrative remedies because, once MDOC failed to respond to his IRR, no further administrative remedies were available." Id.; c.f. Madinah v. Marberry, Civ. No. 05-73801, 2006 WL 2365129, *2 (E.D. Mich. Aug. 15, 2006) (holding exhaustion not futile and not excused where Regional Director never replied to inmate's complaint because BOP policy provides that an inmate who does not receive response within allotted time period may consider such failure to respond a denial).

The Bureau of Prisons has a three-part administrative remedy program designed to address a federal inmate's concerns regarding any aspect of his or her confinement. (Buege Decl. ¶ 4). This procedure is found in Program Statement 1330.16, Administrative Remedy Program, and is also codified in 28 C.F.R. § 542. (Id.). This program is designed to allow inmates to voice their grievances and provide the BOP an opportunity to resolve issues in-house

prior to an inmate seeking judicial relief. (Id.). Under the administrative remedy program, an inmate must first attempt informal resolution of the complaint. If informal resolution is unsuccessful, the inmate must then raise his or her complaint to the warden of the institution where he or she is confined. (Buege Decl. ¶ 5). The inmate may then appeal the warden's response to the Regional Director and then again to the Central Office of the Bureau of Prisons if dissatisfied with the Regional Director's response. (Id.). An inmate has exhausted his or her administrative remedies once the inmate has received a final response from the Central Office. (Id.).

In this case, Stewart filed at least two administrative complaints at the institutional level about the computation of his sentence, one on August 29, 2007, and one on April 16, 2008. (Buege Decl. Ex. B). On or about April 29, 2008, Warden Cruz responded to the April 16, 2008 administrative remedy request. (BP-229 Response, attached to Petitioner's Reply to Govt.'s Response, Doc. No. 23). In that response, Cruz stated that because Petitioner was requesting a *nunc pro tunc* designation, his administrative request was forwarded to the Designation and Sentence Computation Center (DSCC) because the *nunc pro tunc* designation could not be performed at the institutional level. Petitioner contends that he never received a response from the DSCC regarding this administrative complaint. It is not clear from the record currently before the Court, what occurred administratively after Warden Cruz's April 29, 2008, letter to Petitioner. Because this Court recommends that the Petition be denied on the merits, it would be a waste of judicial resources to hold an evidentiary hearing on the issue of exhaustion. Therefore, the Court makes no recommendation regarding whether Petitioner should be excused from failing to exhaust his administrative remedies.

**B.     Sentence Computation**

Stewart alleges that the BOP improperly calculated his sentence because he was not given credit for the time he spent in state custody after his federal sentence and for 283 days spent in custody reflected on a print-out from the USMS Prisoner Tracking System. Because all of this time was credited towards either Stewart's state or federal sentence, the Petition should be denied.

The Bureau of Prisons is responsible for computing a sentence and determining what credit should be awarded to a defendant for any presentence custody. Tindall, 455 F.3d at 888 (citing United States v. Moore, 978 F.2d 1029, 1031 (8th Cir. 1992); Wilson, 503 U.S. at 331-37. The computation of a federal sentence is governed by 18 U.S.C. § 3585. There are two steps in computing a federal sentence; (1) determining when the sentence commenced; and (2) determining whether the defendant is entitled to credit for time spent in custody prior to the commencement of the sentence. Tindall, 455 F.3d at 888.

**1. Commencement of Stewart's Sentence**

In order to determine when Stewart's sentence commenced, this Court must first resolve whether state or federal authorities had primary jurisdiction over Stewart. If a defendant is transferred to a jurisdiction to face a charge while under the primary jurisdiction of another sovereign, the primary jurisdiction is not lost and instead the defendant is considered to be "on loan" to the other sovereign. United States v. Cole, 416 F.3d 894, 896-97 (8th Cir. 2005); Fegans v. United States, 506 F.3d 1101, 1103 (8th Cir. 2007). As between a state and federal sovereign, primary jurisdiction over a defendant is generally determined by which sovereign first obtains custody or arrests the defendant. Cole, 416 F.3d at 897. Primary jurisdiction then continues until the first sovereign "relinquishes its priority in some way" through release on bail

or recognizance bond, dismissal of charges, parole, or expiration of sentence. Id. In situations where a state authority has primary jurisdiction, after the defendant receives a federal sentence the USMS returns the defendant to state authorities. Fegans, 506 F.3d at 1103-04. Once the defendant is sentenced in state court, a federal detainer is lodged for the un-served federal sentence. Id. After the state sentence has been served, the defendant is delivered to BOP custody to begin serving his federal sentence. Id. A federal sentence commences on the date the defendant is received in custody at the official detention facility. 18 U.S.C. § 3585(a), cited in Fegans, 506 F.3d at 1103.

The State of Kentucky had primary jurisdiction when it arrested Stewart on December 22, 2003. Kentucky relinquished jurisdiction on December 24, 2003, when it dismissed the state charges against Stewart. Kentucky obtained primary jurisdiction over Stewart again on March 22, 2004, when Stewart was again arrested by the State of Kentucky. Stewart was released from state custody on March 30, 2004. Respondent has not provided the court with information showing the manner or reason for Stewart's release on that date. This is immaterial, however, because even if federal authorities had primary jurisdiction over Stewart on April 7, 2004, when Stewart surrendered to the DEA, federal authorities relinquished that jurisdiction by releasing Stewart on bond the same day. The State of Kentucky arrested Stewart on May 11, 2004, and did not relinquish jurisdiction over Stewart until he was paroled. As of May 11, 2004 the state of Kentucky had primary jurisdiction over Stewart and he was "on loan" to federal authorities when he received his federal sentence. Therefore, Stewart's federal sentence did not commence until June 28, 2007, when he was taken into federal custody.

### 2. Sentence Credits

Because Stewart's federal sentence commenced after his state sentence, the next issue for the Court to determine is whether Stewart can receive credit against his federal sentence for the time periods he alleges are at issue. 18 U.S.C. § 3585(b) provides that a federal defendant shall be given credit towards his or her sentence for time spent in official detention prior to the date the federal sentence is commenced if the pre-sentence detention *was not credited against another sentence* and it was the result of: (1) the same offense for which the sentence was imposed; or (2) any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed. Id. (emphasis supplied). Regardless of the nature of the offense, a defendant cannot receive credit for time credited to another sentence. Id.; Baker v. Tippy, No. 99-2841, 230 F.3d 1362, 2000 WL 1128285 (8th Cir. Aug. 10, 2000) (table decision); United States v. Kramer, 12 F.3d 130, 132 (8th Cir. 1993).

Stewart first contends that he should receive credit from August 17, 2004 to April 4, 2006, the time period after Stewart was returned to state custody but before he received his state sentence. Stewart bases his contention on a memorandum dated August 24, 2007, from the BOP DSCC (attached to Petitioner's Motion to Strike, Doc. No. 13). This memorandum states that Stewart would receive credit for this time because that period of detention was not credited to his state sentence. Respondent contends that the August 24, 2007, memorandum is inaccurate and has been corrected. In support of its contention that Stewart did in fact receive credit towards his state sentence for the August 17, 2004 to April 4, 2006 time period, Respondent provided a copy of the State of Kentucky's Judgment and Sentence. The Judgment provides that Defendant "is hereby credited with time spent in custody prior to sentencing, namely 690 days as certified by the jailer of Powell Co. Ky." (Ex. A, attached to the Declaration of John Farrar dated

9

February 19, 2009, hereinafter "Farrar Decl. II").  The 690 days includes the eight days Stewart spent in custody after his second arrest from March 22 to 30, 2004, and 682 days for the entire period Stewart was in custody after his arrest on May 11, 2004, until the date his state sentence commenced on April 5, 2006.   Because the time Stewart spent in custody from August 17, 2004 to April 4, 2006 was included in the 690 days credited to his state sentence, Stewart cannot receive credit towards his federal sentence for this time period.

Stewart also contends he should be awarded credit for 283 days spent in custody as reflected on a printout from the USMS Prisoner Tracking System (attached to Petitioner's Motion to Strike).  This document shows the following custody periods:  (1) April 7, 2004, the day Stewart surrendered himself to the DEA; (2) June 3, 2004 to August 17, 2004, a portion of the time Stewart spent in federal custody; (3) August 9, 2006 to February 21, 2007, a portion of the time Stewart spent serving his state sentence; and (4) June 28, 2007 to July 9, 2007, time after the commencement of Stewart's federal sentence.  The BOP has already credited Stewart for the day he surrendered to the DEA.  The period Stewart spent in federal custody before his federal sentence was part of the 690 days credited to Stewart's state sentence and, as set forth *supra*., cannot be credited again to his federal sentence.  As set forth *infra*., the BOP cannot credit Stewart for the time he spent serving his state sentence.  Finally, Stewart's sentence commenced on Jun 28, 2007, and the time period after this date is being counted towards his sentence and there is no need for a sentence credit.  Therefore, the BOP's sentence calculation is correct and Stewart's Petition should be denied.

### C. Concurrent Sentences

Stewart contends that the BOP should give him credit towards his federal sentence for the time he spent serving his state sentence, or in other words, his state and federal sentences should be considered to run concurrently.

When a federal defendant is already serving a state sentence, a district court is statutorily authorized to make the federal sentence run concurrently or consecutively with the un-discharged state sentence. 18 U.S.C. § 3584(a); Fegans, 506 F.3d at 1103; Cole, 416 F.3d at 897. This statute is inapplicable to the instant case because Petitioner was sentenced in federal court *before* he received his state sentence. Section 3584(a) does not address the situation faced by Stewart in this case, where the state has primary jurisdiction and loans a defendant to federal authorities and the defendant is sentenced first in federal court and then in state court. Fegans, 506 F.3d at 1104. In this situation, a state court will at times declare that the state sentence should run concurrently with the federal sentence. However, the state court's intention that the sentences run concurrently is not binding on the BOP or federal courts. Id. at 1104; Hendrix v. Norris, 81 F.3d 805, 807 (8th Cir. 1996). As the Eighth Circuit stated, "the state court's action raises the defendant's expectations but does not resolve the issue." Fegans, 506 F.3d at 1104.

The circuit courts have generally approved, or at least assumed, the BOP's authority to make *nunc pro tunc* designations that retroactively make a federal sentence concurrent to a state sentence. Fegans, 506 F.3d at 1104. The legislature has given the BOP broad discretion to choose the location of an inmate's imprisonment, which includes deciding if a prisoner may serve his sentence in a state facility. 18 U.S.C. § 3621(b); Fults v. Sanders, 442 F.3d 1088, 1090-91 (8th Cir. 2006); Fegans, 506 F.3d at 1103. 18 U.S.C. § 3621(b) sets out various factors the BOP should consider in determining the location of a defendant's imprisonment. A BOP finding that

11

an inmate should not be given a *nunc pro tunc* designation is entitled to substantial deference and the designation is reviewed under an abuse of discretion standard.  Fegans, 506 F.3d at 1103.  BOP Program Statement 5160.05 addresses requests for *nunc pro tunc* designations and provides that such a designation shall be made "when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system."

Respondent alleges that BOP policy does not allow it to designate a sentence to be served concurrently when statutory language mandates consecutive sentences.  BOP Program Statement 5880.28(e-1).  Stewart was sentenced pursuant to 21 U.S.C. § 841(a)(1) for possession with intent to distribute methamphetamine and 18 U.S.C. § 924(c)(1) for carrying a firearm during and in relation to a drug trafficking crime.  18 U.S.C. § 924(c)(1)(D)(ii) provides, "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed."  Other courts have concluded that when a defendant is sentenced pursuant to 18 U.S.C. § 841(a)(1), the BOP does not abuse its discretion by not making a *nunc pro tunc* designation that a state sentence runs concurrently with a federal sentence.  Goins v. Hickey, Civ. No. 207-135, 2008 WL 3819830 (S.D. Ga. Aug. 13, 2008); Calhoun v. Stine, Civ. No. 07-182, 2008 WL 185841 (E.D. Ky. Jan. 18, 2008).

This Court cannot say that the BOP abused its discretion in denying Petitioner's request for a *nunc pro tunc* designation.  BOP policy provides that Stewart is not entitled to a *nunc pro tunc* designation because the statute he was sentenced under, 18 U.S.C. § 924(c), requires his sentences to be served consecutively.  To allow Stewart's sentence to run concurrently would be inconsistent with § 924(c) and therefore inconsistent with "the goals of the criminal justice

system." Stewart has not provided the Court with any evidence demonstrating the BOP abused its discretion. Because the Court cannot conclude the BOP abused its discretion in denying Petitioner's *nunc pro tunc* request, the Petition should be denied.

### III. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition for Habeas Corpus Relief [Doc. No. 1] be **DENIED** and **THIS ACTION BE DISMISSED WITH PREJUDICE**.

Dated: May 4, 2009

        s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 15, 2009** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.